Bush *v.* Miller.

━━━━━ ● ○ ● ━━━━━

Bush *vs.* Miller.

Where the authority of an attorney to appear for a party, in a justice's court, is in writing, the hand-writing of the client may be established presumptively. Thus where letters were directed by the attorney to the client, at the residence of the latter, in relation to the subject matter of a suit, and several answers were received by him in due course of mail, purporting to be signed by the client, all in the same hand-writing and dated at his residence, which letters contained a general authority to the attorney to take such steps, legal or otherwise, as he might deem advisable, for the recovery of the debt ; *Held* the authority was sufficiently proved.

In 1846 a roll of carpeting was delivered by the plaintiff's agent to the clerk of the defendant, the latter being a storage and forwarding merchant, at his store in P. J. on the Erie canal, to be forwarded as directed, in the usual course of business ; the carpeting being deposited as other goods were, and as the defendant was in the habit of receiving them, and the clerk taking charge of it, as he was in the custom of receiving goods, with the defendant's approval, and engaging to forward it to its place of destination ; the charges to follow the carpeting and to be paid at the end of the route, in the customary manner. The carpeting being lost, and the defendant having omitted to take a receipt, or keep a memorandum of the transaction, and having totally failed to account for the property from the time it was

delivered to him; *Held* that he was liable in his character of warehouseman and forwarder, to the plaintiff, for the value, without further proof of negligence, in the first instance.

*Held also*, that the defendant was bound to give some account of the property, before he was entitled to cast upon the plaintiff the *onus* of proving negligence.

THIS action was commenced before a justice of the peace of the county of Montgomery in May, 1848, and tried by a jury on the 25th day of July following. The pleadings were framed before the code of 1848 took effect. The declaration contained three counts. The first count was in case, charging that the defendant, in the fall of 1846, and ever since, was and had been, a storing and forwarding merchant, having his place of business upon the Erie canal, in the village of Port Jackson in the county of Montgomery. That the plaintiff, at the request of the defendant, delivered to him, as such storing and forwarding merchant, a roll of carpeting containing 100 yards, of the value of $100, which he, the defendant, received and promised carefully to forward upon the Erie canal to West Troy, and from thence to Fort Ann in the county of Washington, in consideration of a certain reward to be paid the defendant therefor by the plaintiff; yet the said defendant did not carefully forward the said carpeting &c., but the same was afterwards lost, through the carelessness and negligence of the defendant. The 2d count was also in case, and substantially like the first, except alledging that the defendant was, at the time and place aforesaid, *a wharfinger and common carrier*, and as such received the property, and promised to forward it, and that it was lost through his carelessness and negligence. The 3d count was in trover. The defendant pleaded the general issue, and gave notice that he would prove, on the trial, that he never had any carpet of the plaintiff; and if he had received any such carpet, that he forwarded the same, according to directions. Before pleading, the defendant objected to the appearance of C. B. Cochran, Esq. who presented himself as counsel on behalf of the plaintiff. Mr. Cochran was sworn as to his authority, and testified that some time previously he had received through the mail a letter dated and postmarked Fairfax, Vermont, purporting to come from, and to be signed by,

Bush *v.* Miller.

the plaintiff, and in reference to the subject matter of this suit; that since that time he had sent two or three letters, in regard to the same business, directed to the plaintiff at Fairfax, Vt., to each of which he had received answers by due course of mail, all from the same individual, dated at the same place, and all in the same hand-writing; and that those letters from the plaintiff contained a general authority to take such steps, legal or otherwise, as in the opinion of the witness might be deemed advisable, for the purpose of recovering the carpet or the value of it; that personally he had no acquaintance with the plaintiff, or his hand-writing, except as acquired by the correspondence of which he had spoken. No objection was made to parol evidence of the contents of the letters; nor were they required to be produced. The defendant objected that the proof of authority was insufficient. The justice overruled the objection, and the defendant excepted. On the hearing of the appeal in the county court, four letters, alluded to by Mr. Cochran in his testimony before the justice, were introduced, and submitted by the consent of parties, to be used as evidence on the appeal, *on the simple point of authority only*, and as the ground of Cochran's authority to appear for the plaintiff in the justice's court. It was also admitted that the letters were received through the mail, by the persons to whom they were directed. It is not important to recite all the contents of these letters. The first was directed to the postmaster at Amsterdam, with directions to hand it to a good lawyer of that place, and have him attend to the business, which was to make inquiry concerning the carpet which was lost; and it contained among other things these words: "I want the lawyer to put things in train to get it at any rate. I will see him satisfied. I want it attended to directly." The other three letters were directed to Cochran & McMartin. One of them stated what the writer could prove respecting his directions, as to forwarding. It referred to the letter sent to the postmaster, and added, "I want you to take such measures as you think proper to get the business arranged as the letter directs." The third letter stated, among other things, "I wish to have the matter closed as soon as possible. Do as well as you can with

it, and take what will pay you for your trouble out of what you collect, and remit the balance to me." The sixth letter was one of inquiry as to what had been done. All these letters bore date at Fairfax, Vt., and all purported to contain the signature of the plaintiff.

On the trial it appeared in evidence, by the testimony of Samuel Green, a witness produced by the plaintiff, that in the fall of 1846, William K. Green & Son, the father and brother of the witness, resided in Amsterdam, and were in partnership in the manufacture of carpets. That in October of that year, the plaintiff, who resided in Vermont, procured a carpet of that firm. There were one hundred yards of the carpet, which was worth from fifty-five to sixty cents per yard, at the mill. The witness was present at the time the plaintiff purchased the carpet. The plaintiff's counsel asked the question, "What directions did the plaintiff give at that time, in relation to forwarding the carpet?" This question was objected to, and the plaintiff's counsel then modified it as follows : "What directions did you receive from Bush (the plaintiff) at that time?" The witness answered that the plaintiff, after he bought the roll of carpet, put it into a sack and gave them directions to send it by railroad, and then went west; was gone a few days and then returned. The witness saw him on his return. They tried to send it by railroad but could not, and witness so informed the plaintiff on his return from the west. The plaintiff then gave directions to take it over the river, and send it by way of canal to West Troy, and from there to Fort Ann on board the packet *St. Nicholas.* The sack containing the carpet was marked with the plaintiff's name, "by the way of West Troy, from there on board of packet St. Nicholas to Fort Ann." The witness took it over the river to the defendants' store; he inquired of his clerk, who stood in the door, if he would take the carpet, and forward it as directed, and he said he would; he then received the carpet, and took or rolled it into the defendant's store as witness unloaded it. He (the witness) had been agent for the firm of Green & Son, for a number of years. He had taken other carpets to the defendant, and had them forwarded through

him to their place of destination. He had never seen that carpet since he left it with the clerk. The defendant kept a forwarding store at Port Jackson, across the river from Amsterdam; his store was on the tow-path side of, and next to the canal. In the year 1846, he carried on the forwarding business on the Erie canal at that place, and received and forwarded goods on the canal. The winter after the carpet was sent, one of the firm of Green & Son received a letter from the plaintiff, stating that he had not received the carpet, and making inquiries about it; that the next fall after, by directions of William K. Green, the witness called on the defendant; that he spoke to him about the carpet, and he said he knew nothing about it; that he would look and see if he could find any memorandum or receipt for it. A few days after, the witness again saw the defendant, who said he could find no memorandum or entry of having sent the carpet, nor any receipt; nor could he give any information about it. The witness further testified on his cross-examination, that he did not take a receipt for the carpet; that he never took a receipt, when leaving carpets to be forwarded. One Tower was the clerk for the defendant.

William K. Green, of the firm of Green & Son, testified that he had frequently forwarded carpets through the defendant; that he always had to pay the forwarding bill at the place of destination of the carpet; the charges followed the carpet, and that was their way of doing business with the defendant.

The plaintiff having rested, the defendant moved for a nonsuit, on the grounds, 1. That there was no negligence shown on the part of the defendant; and 2. That there was no consideration for the defendant's undertaking. The justice refused to nonsuit; and the defendant recalled Samuel Green, who testified that he had heard of another piece of carpet that was missent by the defendant; it went to the wrong place, by whose fault he did not know. James H. Schuyler was sworn on the part of the defendant, and testified that he was engaged in the storage and forwarding business in Port Jackson; that when goods were left without any particular directions, they shipped them on the first boat. Where no contract is made, as to freight,

the charges follow the goods; that when he sent goods he always took a receipt, and made an entry of it, with the name of the boat, or the captain's name and the time, and this was the custom of forwarders on the Erie canal, so far as the witness had been acquainted with it. William K. Green, was called on the part of the defense, and testified, that he knew the carpet, and that it was worth fifty cents a yard. He further testified on his cross-examination, that he marked the carpet by the plaintiff's directions, in presence of Samuel Green; that it was delivered to the plaintiff at their office, who gave directions to put it on the cars. As it could not be sent in that way, he afterwards gave them directions to take it over the river and send it by the canal. The clerk spoken of by the witness Samuel Green, was examined by commission; he testified that he did not know the plaintiff, but had been acquainted with the defendant four years; that he commenced as clerk with him in 1846 and continued till 1847; that during that time the defendant was engaged in the mercantile business, and in receiving and forwarding goods on the canal. He did not recollect of ever receiving a roll of carpeting from Samuel Green, or at the defendant's store, to be shipped to the plaintiff or any other person. His instructions from the defendant were, in the way of business to receive articles of this kind in store to be forwarded, and to take a receipt from the captain of the boat, when forwarded, unless the person leaving them gave directions to forward by a particular line. It was also the practice to receive pay for storage and for forwarding articles. The custom was, when such articles were left so to be forwarded, to forward them by the first opportunity, and if Green left any carpet, he believed it was forwarded, according to the course of business at the store. This testimony was objected to by the plaintiff's counsel, but received. When such articles were received, they were received on account of the defendant, and not on account of the witness. The witness further stated on his cross-examination, that during the years 1845 and 1846, the defendant was engaged in receiving goods to be stored and forwarded; of receiving pay for the storage, and of forwarding them the first

Bush *v.* Miller.

opportunity, or according to directions. The witness was in the habit of receiving small parcels to be forwarded. The defendant sometimes received them, and sometimes the witness received them in his presence. It also appeared in evidence, that immediately after the carpet was left with the defendant, the plaintiff was notified by letter. The jury found a verdict for the plaintiff for $50 damages, for which, with $3,25 costs, the justice rendered judgment. The defendant appealed to the county court of Montgomery county, which court affirmed the judgment of the justice, and the defendant appealed to this court.

*D. P. Corey*, for the appellant.

*Cochran & Heath*, for the respondent.

*By the Court*, C. L. ALLEN, J. It is objected that the authority of the plaintiff's attorney to appear in the court below was not sufficiently proved. The testimony was, that letters were directed by the witness to the plaintiff at Fairfax, Vermont, in relation to the subject matter of the suit, and that several answers were received, purporting to be signed by the plaintiff, all *in the same hand-writing*, and *dated at that place*, and received by the witness in due course of mail; which letters contained a general authority to the witness to take such steps, legal or otherwise, as in his (the witness') opinion might be deemed advisable for the purpose of recovering the carpet or the value of it. An authority to appear may be by parol, or in writing, and the attorney himself may prove his authority. (1 *Cowen*, 112.) If the authority is in writing, evidence of the hand-writing must be produced. This may be established, however, presumptively; as, where letters are directed to a particular person on business, and answers are received in due course of mail, a fair inference arises, that the answers were written by the person from whom they purport to come. (*Cunningham* v. *The Hudson River Bank*, 21 *Wend*. 557. *Ovenston* v. *Wilson*, 2 *Car. & Kirwan*, 1.) It is said the letters should have been produced and

proved in the usual way; but the evidence of their contents was received without objection, and it is too late to raise it here. Besides, the letters were made a part of the case, by stipulation, before the county court. They show, as the attorney testified, a general authority to collect the demand—which implied an authority to sue if necessary, and appear. (*McMinn* v. *Richtmyer*, 3 *Hill*, 236.) The authority to appear was sufficiently proved.

It is again objected, that the verdict and judgment are general, and apply as well to one count as another, though there is no pretense of any evidence to sustain the 2d and 3d counts. The answer to this objection is, that the action was commenced before the code, when case and trover might be joined. Besides, no objection of this kind was made before the justice; and the misjoinder of counts, in the justice's court, was cured by verdict. Much greater latitude was allowed in pleadings before justices, than in courts of record, especially in cases where the objection was not taken at the proper time. (*Whitney* v. *Crim*, 1 *Hill*, 61.)

The important question in this case is, whether the defendant is liable in his character of warehouseman and forwarding merchant. "Forwarding merchants," says Justice Story in his treatise on bailments, § 444, "are a class of persons well known in this country, and usually combine in their business the double character of warehousemen and agents, for a compensation to ship and forward goods to their destination. This class of persons is especially employed upon our canals and railroads, and in our coasting navigation by steam vessels and other packets. Their liability is like that of warehousemen and common agents, and is governed by the general rule, and of course they are responsible for ordinary care, skill and diligence. A person who receives goods in his own store, standing upon his own wharf, for the purpose of forwarding them, is deemed but a mere warehouseman, responsible for ordinary diligence only.'

The responsibility of the wharfinger or forwarding merchant begins when he receives the property into his custody, and ends probably when he delivers to the captain or agent of the boat, by which it is to be forwarded. During that time, he is bound

Bush *v.* Miller.

to exercise "all that care and diligence on his part that a prudent or careful man would exercise in relation to his own property." In all such cases the defendant is liable only for ordinary neglect. The plaintiff cannot recover upon mere proof of the loss of the article intrusted to the bailee. He must give some evidence of a want of care in the bailee or his servants.

The question is on whom the onus lies, in this case, or whether the plaintiff having shown the delivery of the carpet to the clerk of the defendant, with a total failure on his part to account for it, is entitled to recover without giving further proof of negligence, in the first instance. In *Platt* v. *Hibbard*, (7 *Cowen*, 497,) Chancellor Walworth in charging laid down the rule, that where property intrusted to a storing and forwarding merchant in the ordinary course of business, was lost, injured or destroyed, the weight of proof was with the bailee to show a want of fault or negligence on his part, or to show that the injury did not happen in consequence of his neglect to use all that care and diligence on his part that a prudent and careful man would exercise in relation to his own property. In a note to that case, it is remarked that the charge, perhaps, carried the doctrine too far, and that it was inconsistent with legal principles to presume that the defendant acts contrary to the trust reposed in him. It is there remarked, that the distinction would seem to be, that when there is a *total default* to deliver the goods bailed, on demand, the onus of accounting for the default lies with the bailee, otherwise he shall be deemed to have converted the goods to his own use, and trover will lie; citing 2 *Salk.* 655; but when the defendant has shown a loss, or where the goods are injured, the law will not intend negligence, and the onus is then shifted upon the plaintiff. In *Schmidt* v. *Blood*, (9 *Wend.* 268,) the same distinction seems to be taken and approved of. Sutherland, J. remarks, "that if goods be bailed to be kept for hire, if the compensation be for house room and not a reward for care and diligence, the bailee is only bound to take the same care of the goods as of his own, and if they be stolen or embezzled by his servant without gross negligence on his part, he is not liable, and the onus of showing negligence seems to be upon the plain-

tiff, " *unless there is a total default in delivering or accounting for the goods ;*" citing the note in 7 Cowen and cases there cited, with approbation. In the case of *Foote* v. *Storrs*, (2 *Barb. S. C. Rep.* 326,) Willard, J. in delivering the opinion of the court, cites with approbation *Schmidt* v. *Blood*, and though the charge in the case of *Platt* v. *Hibbard* is not approved of, yet the distinction as laid down in the note to the latter case and approved of in the former is not overruled ; nor does it seem to have been the intention of the court. In that case the question did not arise. The defendant deposited the lumber on the wharf, and carried it away in his own boats and by his own servants and boatmen ; and whether it had all been taken away, or a part of it was lost or stolen through the negligence of the plaintiff, were questions of fact for the referee and on which he passed. (*And see Story on Bail.* § 444 *to* 454 *inclusive ; Gilbert* v. *Dole*, 5 *Ad. & Ellis*, 540.)

Now what are the facts in this case, and which were found by the jury against the defendant ? In the fall of 1846, the roll of carpeting in question, consisting of 100 yards, was delivered by the plaintiff's agent to the defendant's clerk, and received by him at his store in Port Jackson, on the canal, to be forwarded as directed, *in the usual course of business*, the clerk taking charge of it on account of the defendant as he was in the habit of receiving other articles with the defendant's approval, and engaging to forward it to its place of destination. The witness has never seen the carpet since. The carpet was deposited as other goods were, and as the defendant was in the custom of receiving them, and as is quite usual with storing and forwarding merchants, the charges to follow the carpet and to be paid at the end of the route ; and in which manner the defendant had been in the habit of receiving his pay for forwarding carpets from the same place. When called upon and inquired of for the property the next fall after, the defendant said he knew nothing about it, but would look and see if he could find a memorandum or receipt for it. On being called upon again, a few days afterwards, he replied that he could find no receipt, or entry of having sent the carpet ; nor could he give any information about it.

Bush *v.* Miller.

He did not intimate that it was lost, or that any thing had happened to discharge his obligation as a bailee, but that he could find no receipt and give no account of it. This amounted to a denial of the bailment, and a refusal to deliver the property. At all events it was sufficient evidence of that fact to go to the jury, and they found against him. (*Dunlap* v. *Hunting*, 2 *Denio*, 643.) Forwarding merchants of the description of the defendant were in the habit of taking receipts for articles forwarded, containing the name of the boat, or the captain's name, and the time of forwarding; and the evidence would seem to show that such was the defendant's custom. His clerk testified that he was directed to take receipts when he forwarded goods, and the defendant when called on for the property said that he would look for a receipt, and afterwards remarked that he could find none. Had he taken a receipt in this case, as prudence required him to do, or proved a delivery of the carpet to a captain, or on board of a boat, for forwarding, he could probably have given such information as would have put the plaintiff on the proper track of inquiry, and which might have relieved him from liability. But here was a *total failure* to account for it, after its receipt. He was bound to give some account of it before he was entitled to cast the onus of proving further negligence on the plaintiff. His clerk was sworn as a witness, and testified that he did not recollect of ever receiving the carpet, but if he did, he *believed* it was forwarded, according to the course of business at the store. The jury found against the defendant, upon the question whether it had been forwarded, and we cannot disturb their finding on this and all the other facts above recited, which would seem to be warranted by the evidence. Here there was a *total failure to account for the property delivered.* It is said that the plaintiff had the means of showing by those in charge of the packet boat St. Nicholas, that they had not received the carpet, or that it had not reached its destination nor been received by the plaintiff. There would be force in this argument, if the defendant had shown a delivery of the carpet to a boat to be forwarded to Troy, where it was to be received on board the packet St. Nicholas; but he failed to show a delivery, altogether, and

Bush *v.* Miller.

the proof of negligence was the omission to forward, or to take a receipt from the person by whom it was forwarded, as was his custom in like cases. The onus being on the defendant, he could have resorted to the same testimony which he claims should have been furnished by the plaintiff. It is also said the carpet was lost by the plaintiff's delay in prosecuting his remedy. The delay would not have prevented the defendant's showing that he had discharged his duty by forwarding, or that the carpet had been lost or destroyed by fire or other casualty, which would have released him.

It is farther contended that the letters used as evidence by the plaintiff show that he looked only to the Greens for payment, and not to the defendant. The letters, as before remarked, were not used as evidence at all before the justice, and were only introduced in the county court, by stipulation of the parties, confining their use to the simple point of proving authority to the plaintiff's attorney to appear for him in the court below. They cannot be used for any other purpose here, against the express agreement and stipulation of the parties.

Again, it is argued that it was the duty of the bailee to ship the carpet, and that the law presumes, until the contrary be proved, that he performed that duty; as breach of private duty, negligence or fraud are not to be presumed, but must be proved. The neglect to take a receipt, from the person by whom forwarded, as was his custom, was evidence to repel this presumption, and was passed upon with the other facts by the jury.

The judgment must be affirmed.

[WARREN GENERAL TERM, May 3, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]