## BOWMAN *vs.* EATON.

Where the cause of action alleged in a complaint, is one accruing to the plaintiff by the unlawful conversion of property when he was the owner of it, and not one which accrued to a former owner of the property, by a conversion during his ownership, and which has been assigned to the plaintiff, the plaintiff cannot avail himself of a conversion by the defendant while another person was the owner, and before the sale of the property by him to the plaintiff.

A refusal to comply with a demand is only evidence of a conversion where an ability, at the time, to comply with it, is proved.

A demand of property after the sale thereof to the plaintiff by the former owner, and the disclaimer, by the person of whom the demand is made, of any knowledge of the property, and his omission to deliver it, it having been previously lost or stolen, and he not having possession thereof at the time, is not evidence of a conversion.

APPEAL from a judgment of the county court of Monroe county. The action was originally commenced before a justice of the peace. The plaintiff complained against the defendant, for the trover and conversion of a trunk or valise and its contents, consisting of a quantity of gold and silver watches and chains, various kinds of jewelry, clothing and other valuables, of the value of $100, the property of the plaintiff. The defendant denied the complaint and each and every allegation therein.

On the trial, the following facts appeared. In the month of September, 1855, Elias T. Wakefield, the plaintiff's assignor, on his way to Sackett's Harbor, got off the cars at Charlotte, about 8 o'clock in the evening, purposing to take the steam boat down Lake Ontario which was expected there the same night. He had with him some trunks, and also a valise containing, besides some clothing, 500 or $600 worth of watches and jewelry. The defendant kept a warehouse at the mouth of the Genesee river, for the storage of merchandise. The cars came up on one side of it, and the steam boats on the other. Passengers and baggage passed from the cars through the warehouse to the boats; and, to facilitate the transit, the defendant, for his own convenience, and that of passengers, put up inside his warehouse, two signs, to designate the places for the deposit of baggage, destined for the boats up and down the lake. The defendant had a number of hands employed about the storehouse, in various capacities. It was the business of one of them, Newcomb, to see to the baggage, as it passed from the cars to the steam boats. No one else had any thing to do with that business, except by his direction. Joshua Peet acted as porter under him. The defendant made no charge for the storage of baggage; but if a package was given in his special charge, and the person leaving it was disposed to give a quarter dollar, the witness, Newcomb, took it. On the evening in question, when his baggage came out of the cars, Wakefield asked some one whom he called the clerk, at the defendant's storehouse, what he, Wakefield, could do with it. The clerk inquired where he was going. He said to Sackett's Harbor, and showed him the baggage. The clerk called a man and told him to take care of it, and carry it in; and the man went to carry it in. It was put, with Wakefield's knowledge and assent, under the sign, labeled "Sackett's Harbor," or "down baggage;" one of the storehouse-men telling him that was the place where they put the baggage for Sackett's Harbor. Soon after it was carried in, Wakefield, in passing to another part of the storehouse, saw the baggage in its place— the valise on top of the trunks. Or, according to Mattison,

another witness for the plaintiff, Wakefield, at the time, claimed he had placed the valise with the rest of the baggage. Wakefield testified he thought Joshua Peet carried the things in. The valise was not put in Newcomb's charge, nor in that of any one authorized to receive it. Newcomb directed Peet not to carry Wakefield's things in. He carried the trunks in, notwithstanding, but saw no valise. Half an hour after seeing the valise on the trunks, Wakefield discovered it was missing. He applied to the man he calls the clerk, who called the man that carried it in, and inquired after it and looked around for it. Wakefield then informed him what the valise contained. The defendant, personally, did not see the valise and had nothing to do with it; nor had he known any thing about it, till after Wakefield claimed it was lost. He then came out of his office, and inquired of Wakefield if he had a valise, to whom he gave it, and who brought it in. Wakefield said he had one ; that he had seen it on the trunks with the other baggage, but failed to point out the man to whom he gave it. The employees about the storehouse were all called up and questioned, but they denied any knowledge of it, except one, who thought he had seen such a valise on a trunk or box, but did not know what had become of it. The storehouse was searched, but it could not be found. Wakefield sold his claim to the plaintiff, about four months before the commencement of this suit, which was November, 27, 1855. After the summons was issued, and before serving it, the constable, Dow, assuming to act for the plaintiff, demanded the valise and contents of the defendant, who said he knew nothing about it.

The justice rendered judgment in favor of the plaintiff for $100 damages, besides costs, and the defendant appealed to the county court. That court affirmed the judgment of the justice, and the defendant appealed to this court.

*Jerome Fuller*, for the appellant.

*Wm. H. Bowman*, for the respondent.

*By the Court,* T. R. STRONG, J. The first count in the complaint states that the plaintiff was the owner, and entitled to the possession, of the property in question ; that the property came into the possession of the defendant; and that he wrongfully converted it to his own use, and although often requested to do so, has neglected and refused to deliver the same to the plaintiff.

The second count states that one Wakefield was the owner of the property, and delivered it to the defendant, who received the same to be safely kept and cared for ; that while the property was in the defendant's possession, it was sold and transferred to the plaintiff, of which the defendant had notice; and that afterwards, the defendant wrongfully disposed of and converted the same to his own use, and he neglected and refused to deliver the same to the plaintiff, although often requested.

The cause of action in each count, is one accruing to the plaintiff, by the unlawful conversion of the property when the plaintiff was the owner of it—not one which accrued to a former owner of the property, by a conversion during his ownership, and which has been assigned to the plaintiff.

On the trial, evidence was given on the part of the plaintiff tending to prove that Wakefield, when he owned the property, placed it in the possession and care of the defendant, and that about half an hour afterwards, on Wakefield calling upon the defendant for it, it could not be found, and was not therefore delivered to him ; and that afterwards, Wakefield sold his claim against the defendant in respect to the property, to the plaintiff. And it was admitted by the defendant that when the constable went to serve the summons in this action, before serving it, he demanded the property of the defendant for the plaintiff, and the defendant said he knew nothing about it, and did not deliver it. On the part of the defendant, considerable evidence was given tending to disprove the receiving the property, and assuming the care of it, by the defendant.

Taking the facts to be according to the plaintiff's evidence, I am satisfied he is not entitled to recover. If there has been

any conversion of the property by the defendant, it took place while Wakefield was the owner of it, on the same day the defendant received it, and some time before the sale by Wakefield to the plaintiff. Of such a conversion, the plaintiff cannot avail himself under the complaint, not having alleged it, and the assignment of it to him. There is no evidence of a conversion subsequently. The demand of the property of the defendant, after the sale to the plaintiff, and the disclaimer of the defendant of any knowledge of, and his omission to deliver the property, it having been previously lost or stolen, and he not having possession of the property at the time, was not evidence of a conversion. A refusal to comply with a demand is only evidence of a conversion where an ability at the time to comply with it is proved. (*Hawkins* v. *Hoffman,* 6 *Hill,* 586.) There is no pretense, or ground for pretending, that the defendant, at the time of the demand, had possession of the property.

If there was no proof of the loss, or larceny, of the property, before the purchase by the plaintiff, the answer which the defendant made to the demand, connected with the fact that the property had been delivered to the defendant, might, perhaps, warrant the finding of a conversion. A denial of knowing any thing about it, with proof of the delivery to him, might warrant the inference of a present possession, and having the possession, a refusal to deliver would prove a conversion. (*Bush* v. *Miller,* 13 *Barb.* 481.) But the proof wholly repels such an inference, and disproves the possession of the property by the defendant at the time of the demand.

The judgment of the county court and that of the justice must be reversed.

[CAYUGA GENERAL TERM, June 1, 1857. *Johnson, T. R. Strong* and *Smith,* Justices.]