WILLIAM WILLIAMSON *vs.* CORNELIUS K. RUSSELL.

It is now well settled in this country and in England that a bonâ fide purchaser of goods from a vendor who has obtained them as a fraudulent purchaser, will be protected, notwithstanding the defective title of his vendor.

Whether the title thus acquired, though a valid one, is not defeasible by the tender, by the party defrauded, of the amount actually paid for the goods : *Quære.*

*A* fraudulently purchased a quantity of grain bags of *B*, of the value of $266, and afterwards, while they were in the possession of *G*, and filled with grain, sold them to *C* for $75, to be taken by him from *G* when emptied. *B*, learning that *C* had bought the bags, demanded them of him, tendering him $80, but *C* refused to give them up. *C* in fact had never received them of *G*, although he had demanded them. In trover brought by *B* against *C* for the bags, in which it was found by the court below that *C* bought them in good faith, it was held—1. That *C*'s refusal to deliver the bags on *B*'s demand was not, in

the circumstances, as matter of law, a conversion. 2. That his refusal, taken in connection with *B*'s tender of the $80, and with the inadequate price paid by him for the bags, was strong evidence of the want of good faith on *C*'s part in purchasing them.

TROVER for a quantity of grain bags; brought to the Superior Court in the county of New Haven, and tried on the general issue, closed to the court, before *Sanford, J.* The court found the following facts:—

The plaintiff on the 10th day of August, 1866, was carrying on the business of making, selling and renting bags, in the city of New York. On that day he sold and delivered to Bennett & Fischer two hundred second-hand bags, and on the 14th day of August he sold and delivered to them five hundred more, all which were charged to them on the plaintiff's books at $266, being the price agreed upon. The bags were procured by them of the plaintiff, with the preconceived design not to pay for them, and he never received his pay therefor.

The plaintiff afterwards made unsuccessful efforts to find Bennett & Fischer, and soon learned that they were reputed to be swindlers, and finally traced the goods to New Haven. In the latter part of August, 1866, hearing that the defendant had bought the bags of Bennett & Fischer, he called upon him at his place of business in New Haven, and there learning from the defendant himself that he had bought the bags, and paid $75 for them, he tendered him the sum of $80 and demanded the bags. The defendant refused to accept the money and refused to deliver the bags.

On the 17th of August, 1866, the defendant kept a wholesale flour store in the city of New Haven. John T. Gill, at the same time, kept in his immediate neighborhood a grain, flour and feed store. One of the firm of Bennett & Fischer was at that time introduced to him by Gill, and, supposing that Bennett & Fischer were a responsible firm in New York, and relying upon the statements then made by them as well as the statements of Gill, in reference to the condition and value of the bags, he purchased the same in good faith, without seeing

them, and paid $75 for them. The bags were at this time in Gill's store and in his possession, and, by arrangement between the parties, were to be delivered to the defendant by Gill as soon as they were emptied of the grain with which they were then filled. At the time the demand was made of the defendant by the plaintiff, the bags still remained in the possession of Gill, and so continued till his death, which occurred soon after, and the defendant has never been able to procure them.

The plaintiff claimed, upon these facts, that the court should rule that the defendant was liable to the plaintiff for the difference between the sum of $80 and the sum of $266. But the court refused so to rule, and rendered judgment for the defendant.

The plaintiff moved for a new trial for error in this ruling of the court.

*Doolittle* and *H. Stoddard*, in support of the motion.

This case presents a new question, and the court will not be hampered by authority in deciding it, but may establish a rule of action for the community that will accord with long established general rules of law, will operate equitably, and in some degree protect the public. The rule we contend for is this:—That the bonâ fide vendee of a fraudulent pur-chaser obtains only a defeasible title to the property, the value of that title. being measured by the amount he pays for the property. This rule is consistent with, and necessarily and logically results from, the general rule of law, that is almost universal in its application, and one with which the entire community are familiar, and on which they act in their daily transactions, to wit, " that a man can convey no better title than is in him." The fraudulent purchaser gets a title, but that title is defeasible ; that is, the fraudulent purchaser has a title which may, at the option of the vendor, be revested in the vendor, upon the vendor's, within a reasonable time, dis-affirming the sale, and replacing the fraudulent purchaser in the same position that he occupied before the transfer. *Cook* v. *Gilman*, 34 N. Hamp., 556, 560 ; *Willoughby* v. *Moulton*,

47 id., 207; *Ditson* v. *Randall*, 33 Maine, 202; *Titcomb* v. *Wood*, 38 id., 561; *Hoffman* v. *Noble*, 6 Met., 74; *Coggill* v. *Hartford & N. Haven R. R. Co.*, 3 Gray, 548; *Brown* v. *Pierce*, 97 Mass., 48. This being so, and applying the rule that a man can convey no better title than he has, it follows that as the fraudulent purchaser obtains a defeasible title, when he sells the property he conveys just what he has, that is, a defeasible title. In this sense the *title* to the property is entirely distinct from the *value* of that title. The title itself being one thing, and the value of that title being entirely distinct, it follows that the value of the title the innocent vendee has, is measured by the amount he pays for the article, and this amount being refunded, his title is defeated, if it be done within a reasonable time.

The courts have established but one exception to the rule that a man cannot give title to what does not belong to him. This is in the case of commercial paper; but this exception is founded on the absolute necessities attaching to this kind of property. No argument is needed to prove that the property in question is not subject to the same necessities as commercial paper. The defendant claims that the case presents another exception to that general rule, but the reason for the exception clearly fails, and if it be so that the law, that is, a general rule of law, changes when the reason changes, *a fortiori* an exception to a general rule of law will not be continued where the reason ceases to exist. For it is of prime importance to a mercantile community, that the law should be expressed as far as possible in general rules, so that it may serve as a guide, rather than a trap, to the untechnical. And the general rule of law in this instance operates with entire justice and fairness between the parties, and takes away the inducements to enter into fraudulent speculations.

We agree entirely with the numerous cases which hold that a bonâ fide vendee of a fraudulent purchaser gets a good title. Such certainly is the law; and so long as that title is in existence, he can hold the property against all comers. But we say that title may be defeated in the manner we have stated,

and no court has decided this point. In all of these cases the former owner of property has undertaken to treat the property as his while the bonâ fide vendee held the title. In the case at bar the defendant had no title at the time this action was brought.

*C. Ives,* contra.

1. The defendant is not liable in this case, because he did not have possession of the bags, either when demand was made, or when suit was brought, or at any other time. They were in Gill's possession, against whom the suit should have been brought.

2. But conceding, for the purposes of the argument, that Gill's possession was the defendant's, then the defendant is not liable, because the sale to the plaintiff by the defendant's vendors was not by reason of fraud void, but only voidable, and the defendant having purchased the property, bonâ fide, without notice of the fraud, and having paid for it a valuable consideration, before the plaintiff had done anything to avoid the original sale, acquired thereby a good title to it. *Hart* v. *Carpenter,* 24 Conn., 427 ; *Parker* v. *Crittenden,* 37 id., 148 ; *Thompson* v. *Rose,* 16 id., 81 ; Story on Sales, §§ 200, 387 ; *Anderson* v. *Roberts,* 18 Johns., 515 ; *Nichols* v. *Pinner,* 18 N. York, 295 ; *Nichols* v. *Michael,* 23 id., 264 ; *Williams* v. *Tilt,* 36 id., 319 ; *Wait* v. *Green,* id., 556 ; *Craig* v. *Marsh,* 2 Daly, 61 ; 4 Kent Com., 464 ; *Neal* v. *Williams,* 18 Maine, 391 ; *Ditson* v. *Randall,* 33 id., 202 ; *Titcomb* v. *Wood,* 38 id., 561 ; *Somes* v. *Brewer,* 2 Pick., 184 ; *Rowley* v. *Bigelow,* 12 id., 307 ; *Hoffman* v . *Noble,* 6 Met., 68 ; *Field* v. *Stearns,* 42 Verm., 106 ; *Bradley* v. *Obear,* 10 N. Hamp., 477 ; Hilliard on Sales, ch. 21, § 11 ; *Bean* v. *Smith,* 2 Mason, 252 ; *Chicago Dock Co.* v. *Foster,* 48 Ill., 507 ; *Hutchinson* v. *Watkins,* 17 Iowa, 475 ; *Shufeldt* v. *Pease,* 16 Wis., 659 ; *Hall* v. *Hicks,* 21 Maryl., 406.

SEYMOUR, J. This motion for a new trial is clear and distinct in most of its statements of fact, but it fails entirely to disclose what questions of law were made by counsel or ruled

by the court.   An interesting point of law which it appears·
might have arisen at the trial has been discussed here by
counsel and has been examined by us with considerable care;
but that point did not necessarily arise in the Superior Court.
That court may, for anything appearing in the motion, have
decided that the plaintiff's title was perfect as against the
defendant; for the conversion of the property by the defend-
ant is not found as a fact.   Certain evidence tending to prove
a conversion is stated, but the ultimate fact of conversion is
not found affirmatively, and perhaps by the general finding
of the issue for the defendant the proof of conversion was
regarded as insufficient.

The fact of demand for the bags by the plaintiff upon the
defendant is found proved, as is also the refusal of the defend-
ant to deliver them, but it also appears that at the time of
the demand the bags were not in the defendant's actual pos-
session, but were in the possession of one Gill, under an
arrangement between the parties that they were to remain in
Gill's possession until emptied of the grain in them; and it
further appears that the defendant has never been able to
obtain possession of them.   Under these circumstances we
cannot say, as matter of law, that the Superior Court erred
in finding that there was no conversion of the property of
the defendant to his own use.   If the property was not at
the time of the demand subject to the defendant's order and
under his control, his refusal to deliver is no conversion, and
it does not appear but that his refusal was based upon these
grounds.

If, however, the bags were under the defendant's control, it
certainly was inequitable for him to detain them under the
circumstances disclosed in the motion.   If the bags were
really worth the $266 for which they were sold to Bennett &
Fischer, and were bought by the defendant for $75, he must
have bought them for an inadequate price, and when he found
that the plaintiff had been defrauded of the property he ought
to have accepted the plaintiff's offer.   By his refusal to do so
he places himself in the situation of attempting to avail him-
self of the profits of Bennett & Fischer's fraud.   Such a

refusal in connection with a purchase at an inadequate price would tend strongly to the conclusion that the defendant was not a bonâ fide purchaser, in the full measure of good faith required in cases of this kind to enable a party to hold property bought of a fraudulent vendee.

But the Superior Court has found, in view of all the facts before it, that the defendant purchased in good faith, and the rule appears now to be well settled in this country and in England that such a purchaser will be protected, notwithstanding the defective title of his vendor, when the goods were obtained by such vendor as a purchaser of them, by fraudulent representations. We feel bound by the finding to treat the defendant as a bonâ fide purchaser; there is nothing in the record which authorizes us as matter of law to hold the contrary.

It was urged in argument that, admitting the original purchase by the defendant to have been in good faith, yet under the circumstances the detention was inequitable and wrongful and good ground for the action of trover. If the conversion had been found this question might have arisen at the trial in the Superior Court, but it does not appear to have been brought to the attention of that court, and in our consultations we are not fully agreed as to the effect of such a refusal. We all concur in holding that the question is not before us in such shape that we have jurisdiction of it, and therefore, for the reasons before stated, advise no new trial.

In this opinion the other judges concurred.