## SPEARS & GREGORY vs. THE LAKE SHORE AND MICHIGAN SOUTHERN RAILROAD COMPANY.

The defendant was one of the companies forming a continuous and connecting line of railroads from Titusville to Boston, engaged in the business of transporting oil and other freight from the former to the latter place. By an arrangement between such companies, cars loaded with freight were run from each terminus over the whole length of said line. The plaintiffs, being shippers of oil, at Titusville, provided and furnished wooden tanks of their own, suitable for holding oil to be transported over the said continuous line, from T. to B.; and, by an arrangement between them and one of the companies, such tanks were placed on platform cars belonging to that company, and fastened thereto, for safety, but they were to remain the property of the plaintiffs. Cars, with tanks thereon, filled with oil belonging to the plaintiffs, were run between T. and B. After the tanks were emptied of their contents, at B., the cars, with the empty tanks thereon, were, by the same line, returned to T. The carriers furnished the plaintiffs with a bill of lad-

ing, for each shipment of oil, specifying the quantity of oil, but no mention was made of the tanks themselves. No bill of lading was furnished on the return of the empty tanks; nor was any consideration paid for the transportation of such empty tanks, independent of that paid for the transportation of the oil from T. to B.; nor was any special arrangement made as to the return transportation. Two of said tanks, filled with oil, owned and shipped by the plaintiffs, to B., while being carried on said cars, and while on that part of the line owned and operated by the defendant, were, with their contents, burned up and destroyed.

*Held,* 1. That the general business of the defendant was that of a common carrier; and if it was, in fact, or in a legal sense, transporting, for hire, the tanks destroyed, then the plaintiffs' claim against it, for the value of the tanks, was established.

2. That under the arrangement made by the plaintiffs with the railroad companies, the latter assumed, as to the tanks, the unrestricted liabilities of common carriers.

3. That although no compensation was paid to the companies, directly, for the transportation of the empty tanks, yet that they received a compensation in a legal sense, in the payment of freight on the oil; and that the plaintiffs were entitled to recover the value of the tanks destroyed.

TRIAL at the Erie circuit. Jury waived. The following facts were either proved or admitted on the trial.

1st. The plaintiffs are copartners, engaged in shipping oil from the oil fields in Western Pennsylvania to Boston, by railroad.

2d. The Buffalo and Erie Railroad Company was a common carrier of goods from and between Erie, Pa., and Buffalo, N. Y. It was consolidated into the Lake Shore and Michigan Southern Rail Road Company, and the latter company became liable to suit for causes of action against the former railroad company.

3d. On and prior to the 11th day of November, 1867, there was a continuous and connecting line of railroads between the village of Titusville, Pa., and the city of Boston, Mass., composed of several distinct companies or corporations, over which line, by an arrangement between such companies, cars loaded with freight were run from each terminus the whole length of such con-

tinuous line. The said Buffalo and Erie Railroad Company was one of the companies forming such line.

4th. With the view and for the purpose of being used in the transportation of their own oil over the said line of connecting railroads, between Titusville and Boston, the plaintiffs provided and furnished tanks of their own, suitable for holding oil to be transported by railroad; and, by an arrangement made by and between the plaintiffs, and the Oil Creek Railroad Company, one of the railroad companies in said connecting line of roads, the said tanks were to be used in transporting oil from at or near Titusville to Boston, for the plaintiffs, and were placed on platform cars belonging to the said Oil Creek Railroad Company. The tanks were fastened to the cars, for safety, but were to be and remain the property of the plaintiffs, and when they ceased to be used, were to be delivered to the plaintiffs—the cars to be and remain the property of the said railroad company.

5th. Such tanks were on said cars, and used in the transportation of oil, for several months prior to the 11th day of November, 1867. Each tank had the capacity of 4,000 gallons, and two tanks were placed on each platform car. Prior to said last mentioned day, each car with tanks thereon filled with oil, belonging to the plaintiffs, was run between Titusville and Boston. After said tanks were emptied of their contents, at Boston, the cars, with the empty tanks thereon, were, by the same line, returned to Titusville, no other freight being loaded on the cars.

6th. The carriers furnished the plaintiffs with a bill of lading for each shipment of oil, in which the quantity of oil contained in the tanks was mentioned; but no mention was made of the tanks themselves, nor any statement made that the tanks were not embraced. And a price was fixed for each shipment of oil, &c.,

from Titusville to Boston, according to the quantity thereof.

7th. No bill of lading was furnished on the return of the tanks from Boston to Titusville; nor was any consideration paid for the transportation of the tanks from Boston to Titusville, independent of that paid for the transportation of the oil from Titusville to Boston. It was not disclosed, on the trial, that any special arrangement was entered into between the parties as to the return transportation of the tanks from Boston to Titusville. After the tanks were placed on the cars as aforesaid, and up to the time two of them were destroyed, as hereafter mentioned, they were only used as above stated, in the transportation of oil of the plaintiffs, and were not at any time dismounted from the cars.

8th. On the 11th day of November, 1867, two of said tanks were, at Titusville, filled with oil owned by the plaintiffs, and shipped and consigned to them at Boston; and while being carried on the said cars, and while on that part of said continuous line of railroads owned, run, managed and operated by the said Buffalo and Erie Railroad Company, the said two tanks were, with their contents, without fault or negligence of the last named company, burned up and destroyed. The value of said two tanks was $100 each. The loss happened soon after the said 11th day of November, 1867.

BARKER, J. At the time the plaintiff's property was destroyed, it was in the sole possession and under the exclusive management of the Buffalo and Erie Railroad Company. Its preservation and protection from damage was beyond the supervision of the plaintiffs, and was wholly confided to the oversight of the said company and its agents.

The liability of the company for the damages arising from the loss, is sought to be maintained upon the ground that the entrustment of the property was made

to the corporation, now represented by the defendant, as a common carrier of merchandise. Unless it is held that such was the real relation, as between the owners of the goods and the railroad company, the plaintiffs are without remedy, for no fault or negligence is imputed to it while in possession of the property.

A common carrier is a person who undertakes to transport from place to place, for hire, the goods and property of such persons as may see fit to employ him.

The general business of the Buffalo and Erie Railroad was that of a common carrier. If it was in fact, or in a legal sense, transporting for hire the property destroyed, then the case is established, in every particular, against the company.

In ascertaining the particular facts of the case, I am unable to find that a compensation was paid to the plaintiffs by the carriers forming the line, for the use of the tanks. I have regarded Mr. Spear's letter, read in evidence, under a stipulation, as recalling, and a correction of, his evidence, that leakage was paid by the companies to the plaintiffs. With this correction made, there is nothing upon which to base a finding that they were in any sense lessees of the tanks. Had such a relationship been established, it would have been wholly inconsistent with the idea that the railroads were transporting the tanks charged with the strict liability of common carriers, in case of loss.

The tanks were delivered by the owners to be used in the transportation of their own oil, and for no other purpose; they were constantly used in that business and none other. Such or similar packages were absolutely indispensable to secure safety as well as carriage. The mode of fastening to the cars was also a prudent act, if not a necessary one, to prevent injury to the tanks and loss of their contents. The way the fastening was done, and the constant use of the same on the same car, and the frequent trips made over the road,

promptly suggests the inquiry, as to the real arrange-
ment existing between the parties, concerning the use
of the tanks. It is obvious that the mode of attachment,
and the continuous use on and with the cars of the
railroad, is not necessarily inconsistent with the rela-
tion of shipper and carrier.

I have reached the conclusion that the railroads, un-
der the arrangement made, assumed as to the tanks
the unrestricted liabilities of common carriers.

They received, in a legal sense, compensation for the
service of carriage. True, the money paid over by the
owners was in terms for carrying the contents of the
tanks ; but the tanks were packages in which the oil
was contained. It would be a narrow view, and one
detrimental to the public, to hold to the position of
the defendant. A class of trade in the country, devel-
oped since the use of railroads, which secures quick
trips and permits the repeated use of the same packages
in many kinds of shipments, has led to the custom of
returning the package by the same line, for the purpose
of being refilled for another shipment. I think the
customs of trade sanction the legal position — at least
so far as this case is concerned — that the carrier re-
ceived a compensation in a legal sense, in the payment
of freight on the oil.

It is not unlike the rule, that a carrier of passengers
is liable, as a common carrier of goods, for the ordinary
baggage of the passenger, and the compensation for its
carriage being, in the law, included in the passage money
paid by the traveller. (*Orange County Bank* v. *Brown*,
9 *Wend.*, 115. *Camden &e. Co.* v. *Burke*, 13 *id.*, 628.
*Hollister* v. *Nowlen*, 19 *id.*, 235.)

The defendant's liability must be held to be that of a
common carrier, on the authority of *Mallory* v. *The
Tioga Railroad* (13 *Barb.*, 488.) That case and this
are alike in every essential particular. There, the cars
were owned by the shippers, and were carried loaded

one way, and empty the other, over the road. The owner paid freight by the ton, one way, on the coal, the crates being fastened to platform cars. The cars, when loaded, were injured, on the carrier's road, while being transported by its motive power. The railroad company was held liable as a common carrier, for the injury to the cars. This adjudication I deem a binding authority, to be followed in the disposition of this case. It is not in conflict with any authority I can find, nor with any principle of law which has been brought to my attention.(*a*)

The plaintiffs are therefore entitled to recover of the defendant the value of the tanks, $200, and interest from December 1, 1867, and costs.

Judgment accordingly.

[ERIE CIRCUIT AND SPECIAL TERM, December, 1876. *Barker*, Justice.]

(*a*) That case was *affirmed* by the Court of Appeals. See 32 *How Pr.*, 616.