THE HARTFORD ICE COMPANY vs. THE GREENWOODS
COMPANY.

Hartford Dist., Oct. T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR,
TORRANCE and FENN, Js.

The plaintiff and defendant were at variance with regard to the title to cer-
tain ice in the defendant's ice-house. The ice was that of a former year
and was covered with new ice, and could not be got at without the re-
moval of the latter. On demand made by the plaintiff for the ice the
defendant asserted title to it and refused to deliver it. Held, in an
action brought by the plaintiff for the value of the ice, that the defend-
ant could not set up, as a reason for the refusal to deliver, that the ice
was so situated that it could not be delivered.

An absolute and unqualified refusal of a party having property in his pos-
session, to deliver it to the owner on demand made, constitutes a con-
version of the property. If the party has a lien on the property, or is
not able to deliver it, he must put his refusal on that ground, or it will
have the effect of an absolute refusal.

[Argued October 9th—decided October 26th, 1891.]

ACTION to recover for ice belonging to the plaintiff and
converted by the defendant; brought to the Superior Court
in Hartford County, and tried to the court before *J. M. Hall,
J.* Facts found and judgment rendered for the plaintiff and
appeal by the defendant. The case is fully stated in the
opinion.

*J. B. Foster* and *C. E. Perkins*, for the appellant.

*L. E. Stanton* and *H. E. Taintor*, for the appellee.

FENN, J. This is a civil action in the nature of trover, in
which, in the concisest manner, it is stated in the complaint
"that, on August 20th, 1890, the defendant had certain ice
in its possession, belonging to the plaintiff;" with an aver-
ment of demand, refusal, and conversion. The answer was
double—a denial, and loss of title by the plaintiff through
neglect to take possession and remove within a reasonable

or agreed time. The facts found were, in substance, as follows:—The plaintiff, in August, 1889, purchased of the defendant the ice, two thousand six hundred tons, in one compartment of an ice-house owned by the defendant at New Hartford, and paid for the same. There was no agreement as to when the ice was to be removed by the plaintiff. The defendant, however, knew that the plaintiff would not desire to remove the same faster than the demands of its business of ice dealers, at retail and otherwise, in Hartford, required. The plaintiff did so remove the ice, from time to time, until March, 1890, when about five hundred tons still remained.

On December 27th, 1889, the defendant wrote the plaintiff, saying that it was about time to cut another crop and asking how soon the plaintiff could give it the use of its ice-house. The plaintiff's agent soon after saw the agent of the defendant and said that the defendant could put its new ice above the old ice if it had occasion. No further notice or request as to the removal of the ice was ever made by the defendant.

Shortly before March, 1890, the defendant did cover the plaintiff's ice with several feet of new ice. The plaintiff, on March 10th, 1890, wrote the defendant, saying—"As there was no understanding as to when we should take the ice away, we suppose that it is still ours, and shall claim it whenever the same can be got at. Is that your understanding in covering it up?" To which the defendant replied, March 11th, 1890, saying its understanding was that the plaintiff had the lease of the ice-house for the season, or until the defendant commenced harvesting ice. The title to the ice so covered thus became a subject of controversy between the parties from that time until suit was commenced on September 17th, 1890, each party claiming the ice as its property. About August 20th, 1890, the plaintiff's attorney went to New Hartford, and made a formal demand upon the defendant for the ice. The defendant then and there asserted its title to the ice and declined and refused to deliver or agree to deliver it to the plaintiff. The defendant never retracted

its position, but the next day, after consulting counsel, wrote the plaintiff, saying—" We have come to the conclusion that our part of the contract has been fully performed." The court below further found "that the plaintiff did not unreasonably delay the removal of the ice, but at all times removed the same as fast as it could use it in its business. The defendant was in no way damaged by the non-removal of the plaintiff's ice, as it did not gather ice enough to fill its ice-house above the space occupied by the ice of the plaintiff." It was agreed that the remaining ice was worth four dollars per ton at and after August 20th, 1890, and thereafter until the defendant sold the ice, which it did shortly after suit was brought.

The court rendered judgment for the plaintiff for two thousand dollars damages, but as the ice, being covered, would not have been available without removal of the defendant's ice, about November 1, 1890, interest was allowed only from the latter date. The defendant appealed.

Although it was somewhat argued that the ice in question was not, in August, 1890, the property of the plaintiff, yet this claim was not much pressed, and in view of the character of the finding we may dismiss it and confine our consideration to the chief and sole remaining contention of the defendant :—" that there was no evidence of the conversion of the ice before the suit was brought, because, as the defendant says, it appears that the defendant *could not* deliver the property when demand was made, as it was then covered by fresh ice ; and that a refusal to do the impossible is not evidence of a conversion ; and that it made no difference that refusal, under such circumstances, was coupled with an assertion of title and a denial of the plaintiff's right."

Now, in order to vindicate this claim, it should first appear that it is not in conflict with previous decisions in this state, especially the cases of *Thompson* v. *Rose*, 16 Conn., 71, and *Clark* v. *Hale*, 34 Conn., 398, in the former of which, being an action of trover, it was held that a refusal to deliver goods upon a demand is *primâ facie* evidence of a conversion, and that when an officer entitled to a lien, on

demand of the goods made an unqualified refusal, without any claim of lien, he could not afterwards set up such lien as a defence to an action of trover for the goods; and in the latter of which it is held that, where a person having the chattel of another in his possession, on demand by the owner absolutely refuses to deliver it, it is sufficient evidence of conversion in the absence of rebutting proof, although the chattel was at a distance from the place of demand and could not have been at once delivered, and where the court in its opinion uses this significant language —" The absence of the wagon was not the cause of the refusal."

Let us note, in passing, that the fact that the ice was covered was not the cause why this defendant not merely refused to deliver it, but went further and asserted title in itself, and the effect of supporting the present claim of the defendant would be to enable it to turn a refusal, squarely made, in the nature of joining issue upon the question of title, (when that issue was judicially decided against it, though in the meantime, in the further assertion of such title, it had sold the property,) into something in effect like a dilatory plea, to defeat the present action as merely premature, and to cast the plaintiff in a bill of costs. We think the language of the court in *Thompson* v. *Rose* relevant—" But here again the defendant is met, and we think conclusively, with the fact that he set up no such claim at the time, but made an unqualified refusal. Had this refusal been qualified by this claim of lien, the plaintiff might have met it and obviated it, but the defendant keeps it a secret in his own breast, and now seeks to defeat the plaintiff's action by a claim before unknown." Indeed, in the present case the defendant's action is rendered emphatic by the fact that the plaintiff was seeking, in the only way that seemed possible, to learn from the defendant whether its act, in covering the ice in question, was done merely to store its own ice, to which the plaintiff did not object, or as an assertion of title, and, in effect, a conversion of the plaintiff's property to its own use, and the defendant's conduct

clearly indicates which was the real purpose and design; that the defendant by the act ceased to hold the ice as the property of the plaintiff, and thereafter held and treated it, absolutely and exclusively, as its own. Indeed, had the sale of the ice, in that condition and not available for immediate delivery, been made just before instead of just after the suit, it is difficult to see how it could have made the case against the defendant stronger, or the conversion by the defendant and the ouster of the plaintiff from its rights more pronounced.

It will be manifest from what we have said that we regard the defendant's contention as counter to the doctrines of the case cited, but the cases which the defendant itself cites in its brief, and upon which it relies, are also, as it seems to us, opposed to such contention. Those cases are *Williamson* v. *Russell*, 39 Conn., 406; *Gilmore* v. *Newton*, 9 Allen, 171; *Stackpole* v. *Eastern R. R. Co.*, 62 N. Hamp., 493; *Kelsey* v. *Griswold*, 6 Barb., 443; *Bowman* v. *Eaton*, 24 Barb., 528; *Whitney* v. *Slauson*, 30 Barb., 276.

In *Williamson* v. *Russell*, although the defendant had bought and paid for the property, he had never had possession of it, being in the same situation as the vendee of the defendant would have been had demand been made upon him before he took possession. The court, by SEYMOUR, J., says:—" Under these circumstances we cannot say, *as a matter of law*, that the Superior Court erred in finding that there was no conversion of the property of the defendant to his own use. If the property was not, at the time of the demand, subject to the defendant's order, or under his control, his refusal to deliver it is no conversion, and it does not appear but that *his refusal was based upon those grounds*. If, however, the bags were under the defendant's control, it certainly was inequitable for him to detain them under the circumstances disclosed in the motion." And again, referring to another question—" If the conversion had been found, this question might have arisen;" clearly showing that while the court did not feel warranted in saying that, as a matter of law, the court below erred in finding there

was no conversion, it would not, under the facts found, have done what we are asked to do, under the infinitely more conclusive ones of the present case, have found that the court erred, as a matter of law, in holding there was one.

In *Gilmore* v. *Newton* the defendant bought a horse, in good faith, from one who had no right to sell him, and subsequently exercised dominion over him by letting him to another person, who ran away with him, and neither the person nor the horse was afterwards heard of. The defendant supposed his title to the horse to be perfect, and no demand was made by the plaintiff before commencing his action. A verdict for the plaintiff was sustained. The court, METCALF, J., says:—" According to Lord HOLT, in *Baldwin* v. *Cole*, 6 Mod., 212, the very assuming to one's self the property and right of disposing of another man's goods is a conversion." This, it seems to us, is precisely what the defendant did in this case. And this also is precisely what the defendants in the case of *Stackpole* v. *Eastern R. R. Co.*, 62 N. Hamp., did not do. That was a case where the plaintiff purchased of the defendants certain buildings, including foundation stones and underlying materials, stipulating to remove them within a time specified, and with full notice of the defendant's purpose to proceed at once to erect a freight house upon the site. The plaintiff failed to remove some foundation stones and bricks within the time, and the defendant covered them in filling the cellar, as a necessary step in the construction of the freight house. A charge to the jury that this did not constitute conversion was sustained.

The cases in Barbour all largely turn upon questions as to the appropriate forms of action, and nothing therein conflicts with the conclusions which we have reached.

It is, however, the urgent contention of the defendant that it is good sense, as well as good law, to say that, if a person *cannot* deliver property on demand, his refusal to do what he cannot do is not a conversion." Undoubtedly, but it is equally good sense and good law that if a person has in his possession property of another, which he voluntarily puts it

out of his power to immediately deliver on demand, he ought not to make such inability his pretext and defense for absolutely refusing ever to deliver at all. Nor ought such inability to surrender to the owner to justify his assumption of title in himself. . If, in such cases, demand and refusal becomes inoperative to raise an inference of conversion, it is because, as the court says in *Gilmore* v. *Newton,* the assumption is conversion itself.

The defendant further says that it was unfair on the part of the plaintiff to make demand and bring a suit when it knew that the defendant could not comply with the demand, and that it is evading the real question, whether demand and refusal is evidence when the defendant cannot deliver, to say that the defendant might have said that the ice was covered but when uncovered the plaintiff might take it.

We have no desire, certainly, to evade the real question. Nor do we believe any of the courts had, whose utterances we have cited. But we think that the defendant, whose conduct in asserting title in itself to the property of another compelled the plaintiff's demand, and who neither met that demand by an admission of the plaintiff's ultimate right (which, as the defendant knew, was all the plaintiff sought,) or even by a bare refusal, but who deliberately threw down the gauntlet by the assertion of its own title, is hardly in a condition to dignify its defeat, upon its own chosen ground, by the cry of " unfair."

The defendant says further that there is no difference between the legal positions of persons who do not have property and of those who are unable to deliver it. Clearly no comparison can be made between them on the question of conversion, for where there is no trover there can be no conversion. If the defendant never had actual or constructive possession of the property of another, that ends the matter. The further element is never reached.

There is no error in the judgment complained of.

In this opinion SEYMOUR and TORRANCE JS., concurred; ANDREWS, C. J., and CARPENTER, J., dissented.